UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAN LARKIN BOZEMAN,

                    Petitioner,                  Case No. 1:21-cv-11248

v.                                      Honorable Thomas L. Ludington
                                             United States District Judge

JAMES SCHIEBNER,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO
APPEAL *IN FORMA PAUPERIS***

      In 2015, Petitioner Dan Larkin Bozeman was convicted of multiple carjacking, assault, and firearm charges arising from two separate carjackings in Detroit, Michigan, which Petitioner committed alongside two Codefendants. In May 2021, Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He raises five claims challenging his convictions, but, as explained below, none have merit. Accordingly, Petitioner's petition for a writ of habeas corpus will be denied. And because reasonable jurists would not debate this decision and no appeal would be taken in good faith, Petitioner will be denied a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

**I.**

**A.**

      In April 2015, a jury in Wayne County, Michigan, convicted Petitioner Dan Larkin Bozeman of two counts of carjacking, MICH. COMP. LAWS § 750.529a; two counts of assault with intent to commit murder ("AWITCM"), MICH. COMP. LAWS § 750.83; three counts of felonious assault, MICH. COMP. LAWS § 750.82; one count of intentional discharge of a firearm at a dwelling,

MICH. COMP. LAWS § 750.234b; and one count of felony-firearm, MICH. COMP. LAWS § 750.227b.

ECF No. 6-1 at PageID.156. In May 2015, Wayne County Circuit Court Judge Dana Hathaway

sentenced Petitioner to (1) 200–400 months' imprisonment for each carjacking conviction and

each AWITCM conviction; (2) 5–10 years' imprisonment for the intentional discharge of a firearm

conviction; and (3) 2–4 years for each felonious assault conviction, all of which were to be served

concurrently, consecutive to (4) a two-year prison sentence for the felony firearm conviction.

*People v. Lepper*, No. 327490, 2016 WL 7233828, at *1 (Mich. Ct. App. Dec. 13, 2016); *see also*

ECF No. 6-1 at PageID.156–57.

Notably, Petitioner was tried jointly with Codefendants Steven Lepper and Roger

Diepenhorst. *See Lepper*, 2016 WL 7233828, at *1. The following facts, as recited by the Michigan

Court of Appeals, are presumed correct on habeas review, *Wagner v. Smith*, 581 F.3d 410, 413

(6th Cir. 2009); 28 U.S.C. § 2254(e)(1):

> [D]efendants Steven Lepper, [Petitioner], and Roger Diepenhorst each appeal as of
> right their jury convictions and sentences arising from two separate carjacking
> incidents, both of which occurred during the early morning hours of November 30,
> 2014. In the first incident, involving victim Thomas Jackson, the defendants
> were successful in obtaining the victim's car. During that incident, one or more of the
> defendants fired gunshots at Jackson as he ran from the scene. In the second
> incident, committed approximately an hour after the first, one or more of the
> defendants fired gunshots at the intended victim, Lana Stanton, as she drove off,
> and additional shots were fired at a neighbor, Starkeisha West, who was watching
> the attempted carjacking from her house. The three defendants were tried jointly,
> with defendant Lepper before one jury and defendants Bozeman and Diepenhorst
> before a second jury.

*Lepper*, 2016 WL 7233828, at *1. Petitioner raised three arguments on direct appeal to the

Michigan Court of Appeals.

First, Petitioner argued he was denied a fair trial because the Wayne County Circuit Court

allowed John Wilkinson—Codefendant Lepper's great uncle—to testify that he owned a Desert

Eagle handgun, which was recovered from the scene of one of the carjackings. *Id.* at *6; *see also*

*id.* at \*2. But the Michigan Court of Appeals rejected this argument, noting that one of the victims—Stanton—testified that she saw Petitioner wielding a Desert Eagle handgun during the carjacking. *Id.* The Michigan Court of Appeals accordingly concluded Wilkinson's testimony was relevant "to explain how [Petitioner], through his association with Lepper, could have acquired the type of gun that Stanton claimed [Petitioner] possess[ed] during the offense." *Id.*

Second, Petitioner argued "that his multiple convictions for AWITCM and felonious assault violated his double jeopardy protections." *Id.* at \*7. But the Michigan Court of Appeals rejected this argument, too. *Id.* Applying the "*Blockburger* 'same-elements test,'" the Michigan Court of Appeals concluded that Petitioner's assault convictions did not violate the Fifth Amendment's prohibition against double jeopardy because *felonious* assault and assault *with intent to commit murder* both require proof of distinct elements. *Id.* (noting "[f]elonious assault requires the use of an actual dangerous weapon" whereas AWITCM requires proof of an intent to kill).

Third, Petitioner argued the trial court erred in scoring several offense variables at sentencing. The Michigan Court of Appeals agreed. *Id.* The Michigan Court of Appeals specifically held that the trial court erred when it assessed 25 sentencing points against Petitioner under Offense Variable 6 ("OV6") because this variable—which instructs trial courts to assess 25 points if the offender acted with an intent to kill or cause great bodily harm—can only be considered at sentencing for "homicide, attempted homicide, . . . or assault with intent to commit murder," but the trial court applied this variable to Petitioner's carjacking convictions. *Id.* at \*6–7 (citing MICH. COMP. LAWS § 777.22). Moreover, the Michigan Court of Appeals held that "the trial court erred in assessing 25 points, instead of 10 points" under Offense Variable 9 ("OV9") because the evidence at trial "established that there were, at most, nine persons placed in danger during the Stanton carjacking offense." *Id.* at \*7 (citing MICH. COMP. LAWS § 777.39(1)(c), which requires

courts to assess 25 offense points only when there are "10 or more victims" but only to assess 10 offense points when there are "2 to 9 victims").

So, although the Michigan Court of Appeals affirmed Petitioner's conviction, it remanded the case for resentencing for the rescoring of OV6 and OV9. *Id.* Notably, the Michigan Court of Appeals also held that Petitioner's resentence must conform with *People v. Lockridge*, 498 Mich. 358; 870 N.W.2d. 502 (Mich. 2015), which—decided after Petitioner was initially sentenced—held that Michigan's sentencing guidelines were advisory rather than mandatory. *Id.* at *8. On June 27, 2017, the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Bozeman*, 500 Mich. 1024, 896 N.W.2d 450 (2017)

## B.

In September 2017, the Wayne County Circuit Court resentenced Petitioner to 160–400 months on the carjacking convictions, leaving all other sentences undisturbed. ECF Nos. 6-1 at PageID.157–58; 6-14, PageID.1142. Petitioner appealed his resentence to the Michigan Court of Appeals, arguing that the trial court should have resentenced him on the assault convictions, too. *See* ECF No. 6-18 at PageID.1527. While that appeal was pending, Petitioner filed two *pro se* motions in the Wayne County Circuit Court titled "Leave for Delayed Motion for New Trial Supported by Newly Discovered Evidence" and "Defendant, Dan Bozeman II's, Motion for New Trial Based on Newly Discovered Evidence." *Id.* With Petitioner's permission, the Wayne County Circuit Court combined and construed the motions as one seeking relief from judgment. *Id.* But the Wayne County Circuit Court took this motion under advisement, pending the Michigan Court of Appeals decision on Petitioner's resentencing appeal. *Id.*

On December 13, 2018, the Michigan Court of Appeals remanded the case for resentencing, again concluding that the Wayne County Circuit Court should have re-sentenced

- 4 -

Petitioner and his Codefendants on the AWITCM convictions. *People v. Diepenhorst*, No. 340552, 2018 WL 6578957 (Mich. Ct. App. Dec. 13, 2018).

### C.

In August 2019, on remand, Wayne County Circuit Court resentenced Petitioner to 160–400 months imprisonment for each of his AWITCM convictions "with the rest of his sentences unchanged." *See People v. Lepper*, No. 350757, 2020 WL 6935894, at *2 (Mich. Ct. App. Nov. 24, 2020); *see also* ECF No. 6-1 at PageID.160. And, on March 5, 2020, the Wayne County Circuit Court denied Petitioner's motion for relief from judgment.[1] ECF No. 6-18 at PageID.1527–34. On October 29, 2020, the Michigan Court of Appeals denied Petitioner's application for leave to appeal. ECF No. 6-18 at PageID.1455. And on April 27, 2021, the Michigan Supreme Court followed suit. *People v. Bozeman*, 507 Mich. 931, 957 N.W.2d 796 (Apr. 27, 2021); ECF No. 6-20 at PageID.1624.

On May 19, 2021, Petitioner—while confined in Muskegon Correctional Facility in Muskegon, Michigan—filed a *pro se* petition seeking federal habeas relief under 28 U.S.C. § 2254. ECF No. 1.

### II.

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision:

(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) was based on an unreasonable determination of the facts in light of the

---

[1] The arguments asserted in Petitioner's motion for relief from judgment—as well as the Wayne County Circuit Court's reasons for rejecting these arguments—are largely discussed *infra* Section III, as Petitioner re-raises many of the same arguments as grounds for federal habeas relief. *Compare* ECF No. 1 *with* ECF No. 6-18 at PageID.1527–34.

evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of federal law occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal court may not "issue [a habeas] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, to obtain habeas relief in federal court, a state prisoner must show the state court's rejection of his or her claims was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III.

Petitioner asserts the following five grounds for habeas relief:

I. Probable Cause: warrantless arrest led to tainted photographic identification.

II. Identification: Illegal, unnecessary and unduly suggestive identification procedures.

III. Prosecutorial Misconduct: Known false identification evidence.

IV. Both Defense and Appellate counsels for Petitioner were ineffective for failing to investigate and present in motion or brief to courts the above claims.

V. Denied State/Federal Constitutional rights by trial Judge, who permitted a witness against Co-Defendant Lepper only to testify in the presence of Petitioner's separate jury.

ECF No. 1 at PageID.5–12. Respondent responded that Petitioner's petition should be denied because all claims lack merit and claims I-IV are procedurally defaulted. *See generally* ECF No. 5.

As a threshold issue, this Court need not address Respondent's argument that Petitioner's claims are barred by procedural default because procedural default is not a jurisdictional bar to review the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits[.]") Here, it is more efficient for this Court to proceed directly to analyzing the merits of Petitioner's claim. *See Smith*, 962 F.3d at 207 (noting courts may "reach the merits of a petitioner's claim" before analyzing procedural default, especially when the "procedural issues are complicated" but the "merits are easily resolvable"). So, the merits of each of Petitioner's claims will be analyzed in turn.

### A. Fourth Amendment Unlawful Arrest

Petitioner first argues his arrest violated the Fourth Amendment. ECF No. 1 at PageID.5. Although the title of Plaintiff's first claim suggests his arrest was "warrantless," the substance of Plaintiff's first claim argues that his arrest was without probable cause because (1) "there were no

firearms or stolen property found on or around [him] before his arrest," (2) "there [was] no testimony from any officer that identifie[d] [him] as being one of the persons running in the alley," and (3) he "is a black man" but the crime scene "descriptions" noted that the carjacking suspects were "3 white males." *Id.*

Petitioner's first claim is unreviewable. Federal habeas review of a petitioner's unlawful arrest claim is barred where the state provided a full and fair opportunity to litigate such claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

The Sixth Circuit has promulgated a two-step inquiry to assess whether a petitioner was afforded such "full and fair opportunity." First, "the district court must determine whether the state procedural mechanism, in the abstract, presents *the opportunity* to raise a [F]ourth [A]mendment claim. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (emphasis added). "Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* Accordingly, the key inquiry is whether a habeas petitioner had an *opportunity* to litigate his or her claims, not whether he or she actually did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grounds*, 606 F.3d 867 (6th Cir. 2010). "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004), *aff'd*, 173 F. App'x 437 (6th Cir. 2006) (collecting cases).

Here, Petitioner exercised this procedural mechanism by arguing, in his post-conviction motion for relief from judgment, that his arrest was "warrantless and without probable cause." ECF No. 6-18 at PageID.1483. Petitioner does not argue otherwise. *See generally* ECF No. 1. It matters not that Petitioner waited until *after* his conviction to assert this Fourth Amendment claim. *See Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (rejecting federal habeas review and finding petitioner had "full and fair opportunity" to litigate Fourth Amendment claim when the claim was raised on direct appeal of petitioner's conviction); *Lovely*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004), *aff'd*, 173 F. App'x 437 (6th Cir. 2006) (finding petitioner who raised a Fourth Amendment issue "on direct appeal" was afforded a full and fair opportunity to litigate the issue, and rejecting habeas review). And the fact that Petitioner proceeded *pro se* similarly does not render his opportunity to litigate his Fourth Amendment claim in state court "unfair" to afford federal habeas review. *See Bailey v. Bazzle*, 628 F. Supp. 2d 651, 653, 657-58, 668 (D.S.C. 2008) (finding federal habeas petitioner had a full and fair opportunity to litigate Fourth Amendment claim, precluding habeas review when petitioner addressed the issue by proceeding *pro se* in state court). Thus, Michigan courts afforded Petitioner a full and fair opportunity to litigate his Fourth Amendment unlawful arrest claim. This Court cannot review the same claim as a ground for federal habeas relief.

## B.  Pretrial Photo Array Identification

Petitioner next argues that he is entitled to habeas relief because the police used "illegal, unnecessary, and unduly suggestive identification procedures." ECF No. 1 at PageID.7. At the core of Petitioner's argument lies his contention that all complainants—Jackson, Stanton, and West—described the carjacking suspects to the police as "three white males." *Id.* So, Petitioner argues that the police's pretrial photo array consisting of six black males—including Petitioner—

was both unduly suggestive and unnecessary. *Id.* Moreover, Petitioner argues the pretrial photo array was improper because he was in custody at the time, and his counsel "was not present." *Id.* Each argument will be addressed in turn.

### 1. Undue Suggestion

The Wayne County Circuit Court rejected Petitioner's argument that the photo array was unnecessary and unduly suggestive, concluding:

> [Petitioner]'s photo was placed with other similar looking individuals in order to *avoid* a suggestive array. [Petitioner]'s contention that he was not white, so he could not have been a suspect, negates all of the other evidence linking [Petitioner] to these crimes. Ms. West testified at trial that she told the officer, who presented the photo lineup, that the third individual [who committed the carjackings] was not all white, but was not certain enough to pick someone out [of] the lineup. In response to the prosecutor's question why she could identify [Petitioner] in Court but could not do so in the photo lineup, Ms. Stanton testified that it was easier to identify [Petitioner] in person rather than in a photo. Based on the totality of the circumstances outlined above, the pretrial identification procedure was not unduly suggestive since there was not a substantial likelihood of misidentification.

ECF No. 6-15, PageID.1147 (emphasis added). The state court's conclusion was not an unreasonable application of federal law.

Due process requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). "When reviewing a petitioner's claim that an out-of-court identification violated his or her due process rights, a court's primary concern is with the reliability of the evidence." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). The Sixth Circuit has adopted a "two-part inquiry" to assess such claims. *Id.*; *see also*. First, the criminal defendant—or habeas petitioner—must show that the identification procedure was unduly suggestive. *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). "A

photo lineup is unduly suggestive if it steers 'the witness to one suspect or another, independent of the witness's honest recollection.'" *Searcy v. Berghuis*, 549 F. App'x 357, 365 (6th Cir. 2013) (quoting *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir.2001)). If the defendant meets this burden and shows undue suggestion, the court then considers whether, under the totality of the circumstances, the identification was nevertheless reliable. *Id.* Five factors are relevant to the latter reliability inquiry: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

Here, nothing in the state-court record supports Petitioner's contention that the identification procedures he challenges were impermissibly suggestive. True, the three victims in this case—Thomas Jackson, Lana Stanton, and Starkeisha West—each testified that they initially described the three carjacking suspects as white men.[2] *See* ECF No. 6-9 at PageID.516, 562, 626. But, beyond merely noting the discrepancies between these initial descriptions and his race, Petitioner does not explain how his placement in a photo array was unduly suggestive. Nor could he. Only Jackson identified Petitioner within the photo array. ECF Nos. 6-16 at PageID.1156; 6-18 at PageID.1531. And Jackson testified that on the date of the incident, a tall man ran up to him, pointed a gun at close range, and directed him to get on the ground. ECF No. 6-9 at PageID.519. The police showed Jackson a photo array consisting of what he described as six "light skin" men.

---

[2] Notably, each victim also testified that the perpetrators were wearing dark-colored clothing and that the carjackings occurred in the early morning when it was dark outside. *Id*. at PageID.517 ("Everything was dark."), PageID.573, 587 (noting the carjacking occurred between 2:30 and 3:30 AM), PageID.652 (same). Further, West testified that she informed police that one of the perpetrators "was not all white." *Id*. at PageID.645.

*Id*. at PageID.544. Jackson identified Petitioner's photo, circled it, and noted "Ran up on me with gun. Demanded me to lay on ground." *Id*. at PageID.529. Nothing about Jackson's testimony indicates that the photo array was unduly suggestive. Indeed, Petitioner's photo was placed among similar looking individuals consistent with the description of the suspect based on each victim's statement. Jackson was readily able to identify Petitioner from the lineup without any prompting from police and identified him, again, at trial. ECF No. 6-2 at PageID.170. Petitioner has not shown the photo array presented to Jackson "steer[ed]" him to identify Petitioner for some reason other than Jackson's honest recollection of the men who stole his car at gunpoint. *See Searcy v. Berghuis*, 549 F. App'x 357, 365 (6th Cir. 2013).

Unlike Jackson, Stanton and West did not identify Petitioner throughout pretrial photo arrays. Instead, both confidently identified Petitioner as a carjacker at trial. To the extent Petitioner seeks to suppress these in-court identifications, he has similarly not shown undue suggestion. Stanton testified that she was initially uncooperative with the police and purposefully misidentified Petitioner and his Codefendants when presented with the pretrial photo array because she did not want to "snitch[.]" *Id*. at PageID.581–82 ("Because where I come from snitching is[] prohibited."). Yet Stanton confidently identified Petitioner and his Codefendants during trial, noting that she could have identified each Defendant among the pictures presented by the police in the pretrial photo arrays. *Id.* at PageID.562, 565–66, PageID.582–83 (testifying that she was raised to not aid in police investigations, yet identified Petitioner and his Codefendants at trial because she was "subpoenaed," "d[id]n't want to go to jail," and wanted Petitioner and his Codefendants to "get what they deserve"). *Id*. at PageID.582–83, 606. Similarly, West testified that she could not identify Petitioner in the pretrial photo lineup because the picture of Petitioner portrayed him looking downward, but during the carjacking, she only saw Petitioner's face from "the nose up."

*Id.* at PageID.629. Yet, like Stanton, West confidently identified Petitioner at trial, testifying that she would have easily identified Petitioner pretrial had she been presented with a physical—rather than photographic—lineup. *Id.* at PageID.643 (testifying she couldn't clearly see Petitioner's eyes in the photo array but "guarantee[s]" she would have accurately identified Petitioner if there was a physical lineup where she could have seen his eyes more clearly); *see also id.* at PageID.630 (testifying that she "looked [Petitioner] dead in his eyes when he shot at [her]" and will "never forget those eyes").

At bottom, Petitioner has not shown that any of the victims' identifications—either Jackson's out-of-court pretrial identification or Stanton and West's identification during trial—resulted from undue suggestion.

## 2. Custody and Counsel

Petitioner's separate argument that pretrial identification procedures were improper because he was in custody at the time of the photo array and because the array was conducted without his counsel's presence, ECF No. 1 at PageID.7, is likewise without merit, and has similarly been rejected by the Wayne County Circuit Court:

> [Petitioner] asserts that the photographic lineup was improper because he was in custody at the time. This argument also does not contain a claim of newly discovered evidence. Generally, when an accused is in custody, identification by photographic lineup should not be made unless a legitimate reason for doing so exists. *People v. Kurlyczyk*, 443 Mich 289, 298 (1993). Circumstances that would justify the use of a photographic lineup even when the accused is in custody includes situations in which: (1) it is not possible to arrange a proper lineup; (2) there is an insufficient number of persons that share the characteristics of the accused and that are available to participate in a corporeal lineup; (3) immediate identification is required; (4) the witnesses are distant from the locations where the accused is in custody; or (5) the accused refuses to participate in the lineup. *People v. Davis*, 146 Mich App 537, 546 (1985).
>
> The Court would first note that Ms. Stanton and Ms. West did not pick [Petitioner] out of the photographic lineup. Additionally, there *was* counsel present when the photo arrays were shown to the victims even though adversarial proceedings had

not been initiated. The only individual that Mr. Jackson identified in the photographic arrays was the [Petitioner]. According to Mr. Jackson's testimony, he had sufficient opportunity to view [Petitioner] from close range. Mr. Jackson testified that [Petitioner] ran up to him with a gun in his hand and demanded that Mr. Jackson lie on the ground. Although there were likely legitimate reasons for the use of a photographic lineup rather than a corporeal lineup, [Petitioner] has not demonstrated good cause for failing to raise this issue on appeal or shown actual prejudice.

ECF No. 6-18 at PageID.1530–31 (emphasis added). The Wayne County Circuit Court's conclusion is not contrary to federal law.

First, even if Petitioner's counsel was not present during the pretrial photo arrays—an argument the state trial court expressly rejected as a matter of fact—photographic identification is not a critical stage during which the Sixth Amendment right to counsel attaches. *United States v. Ash*, 413 U.S. 300, 321 (1973) ("[T]he Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender."); *Palmer v. Palmer*, No. 1:15-CV-458, 2018 WL 7891722, at *10 (W.D. Mich. Oct. 29, 2018), *report and recommendation adopted*, No. 1:15-CV-458, 2019 WL 1429258 (W.D. Mich. Mar. 29, 2019) ("The Constitution does not require the presence of counsel at a photographic lineup.").

Second, to the extent Petitioner argues a photo array was improper because he was already in custody, a "defendant does not have a constitutional right to a corporeal lineup." *Quinney v. Burton*, No. 2:16-CV-11351, 2018 WL 3207913, at *4 (E.D. Mich. June 29, 2018). Indeed, whether the circumstances justified using the photo array, instead of a corporeal—or physical— lineup is an issue of state law to be decided by state courts in their discretion. *See Butler v. Nagy*, No. 19-10677, 2024 WL 3513487, at *4 (E.D. Mich. July 22, 2024); *Quinney v. Burton*, No. 2:16-CV-11351, 2018 WL 3207913, at *4 (E.D. Mich. June 29, 2018). True, Michigan jurisprudence favors corporeal lineups when a suspect is in custody. *People v. Anderson*, 389 Mich. 155, 186–

87, 205 N.W.2d 461, 476 (1973), *overruled in part on other grounds by People v. Hickman*, 470

Mich. 602, 611, 684 N.W.2d 267, 272 (2004). But federal courts cannot grant habeas relief based

on a perceived error of state law. *Pulley v. Harri*s, 465 U.S. 37, 41 (1984). So, Petitioner's

argument is without merit.

 In sum, Petitioner has not shown that any identifications were unduly suggestive, and has

not shown that the photo array was procedurally improper—either because he was already in

custody or because his counsel was not present. Petitioner is not entitled to habeas relief on these

grounds.

### C.  Prosecutorial Misconduct

 Petitioner's third ground for habeas relief is similar to his second. Petitioner seemingly

argues he is entitled to habeas relief because he was denied a fair trial when the prosecutor

presented "known false identification evidence." ECF No. 1 at PageID.7. But the Wayne County

Circuit Court rejected this argument as unsupported by the state-court record:

> Defendant asserts that the prosecutor failed to correct false identification evidence
> due to the fact that the initial description of the suspects was three white men and
> that Ms. Stanton purposely picked out the wrong person during the photographic
> lineup.
>
> This issue was not raised on appeal and does not contain a claim of newly
> discovered evidence. Thus, Defendant must establish good cause for failing to raise
> these issues on appeal and actual prejudice.
>
>  Prosecutorial misconduct is determined by considering whether the defendant was
> denied a fair and impartial trial. *People v. Watson*, 245 Mich App 572, 586; 629
> NW2d 41 [](2001). The Court has repeatedly discussed Defendant's argument
> pertaining to the initial report of the suspects being white. In regards to the fact that
> Ms. Stanton purposely picked out the wrong person in the photographic arrays, the
> prosecutor presented this evidence to the jury knowing it could have undermined
> its case. Moreover, Ms. Stanton provided reasons for why she picked out the wrong
> person. Ms. Stanton stated that she did not want to snitch or cooperate with the
> police; thus, she purposely picked out the wrong person so she could leave the
> police station. As previously stated, Ms. Stanton indicated that she could have
> picked each defendant out of the lineup. Further, the person that Ms. Stanton

incorrectly picked was not in Defendant's photo lineup, rather a codefendant's photo array. The jury heard all of this evidence and weighed it accordingly.

Defendant also cites to a portion of the preliminary examination transcript where Ms, Stanton testified that she was scared by her conversation with the officer who presented the photo lineup. Considering her testimony taken as a whole, the Court does not believe that the police officer, who presented the photo lineup at the police station, was threatening Ms. Stanton as to coerce her into selecting Defendant as the perpetrator. At the preliminary examination Ms. Stanton testified that the whole situation was making her feel uncomfortable, which is understandable given the fact that she initially unwilling to cooperate and wanted to leave the police station. Although Ms. Stanton testified that she was scared by the conversation with the officer, she also testified that she may have misinterpreted the conversation. Ms. Stanton also corrected trial counsel when asked whether the officer who conducted the lineup was the one who was talking rough or nasty to you. Ms. Stanton responded by saying that the officer was speaking confusingly. As such, the Court does not find that Defendant was denied a fair and impartial trial [and] Defendant has not shown good cause and actual prejudice.

ECF No. 6-18 at PageID.1532–33. The Wayne County Circuit Court's conclusion is not contrary to federal law.

To obtain habeas relief on this prosecutorial misconduct claim, Petitioner must show that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In evaluating the impact of prosecutorial misconduct, courts consider the extent to which the alleged misconduct misled the jury or prejudiced the defendant—or habeas petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). Notably, the Supreme Court recognizes that this is a "very general" standard that provides reviewing courts with considerable discretion to decide misconduct issues on a case-by-case basis. *Parker v. Matthews*, 567 U.S. 37, 48 (2012).

The Fourteenth Amendment due process clause prohibits a state from knowingly and deliberately using perjured evidence to obtain a conviction. *See Napue v. Illinois*, 360 U.S. 264, 260 (1959). The Supreme Court has recognized that "deliberate deception of a court and jurors by

the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"
*Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112
(1935)). To succeed on a claim of prosecutorial misconduct or a denial of due process based on
the knowing use of false testimony, a habeas petitioner must show that a witness's statement was
"indisputably false." *Byrd v. Collins*, 209 F.3d 486, 517-518 (6th Cir. 2000); *Brooks v. Tennessee*,
626 F.3d 878, 895 (6th Cir. 2010).

The state-court record does not reveal any "indisputably false" testimony. Petitioner has
not even attempted to argue otherwise. Instead, Petitioner conclusively argues that there was
"prosecutorial misconduct" because he is a "black male," but the complainants initially reported
that the three carjacking suspects were "white males." ECF No. 1 at PageID.7. This argument is
without merit. As discussed, all witnesses—Jackson, Stanton, and West—explained why they
initially believed the suspects were white men. *See supra* Section III.B. And Petitioner omits that
one of the three complainants testified that one of three suspects was "not all white." ECF No. 6-
9, PageID.645. Aside from race, Jackson's, Stanton's, and West's identifications accurately
described Petitioner's characteristics. The witnesses described Petitioner as a tall, lean individual
wearing all black. ECF Nos. 6-9 at PageID.543, 568–69, 588, 625, 647; 6-10 at PageID.680, 697.
Petitioner is tall and lean and wore all black when arrested. *See* ECF No. 6-10 at PageID.701–02;
*see also OTIS Biographical Search: Dan Larkin Bozeman*, MICH. DEP'T OF CORR.,
https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=959477 (last visited Sept. 3,
2024) (describing Petitioner as 6' 3" tall and weighing 177 lbs.)  Moreover, each witness
confidently identified Petitioner in court. To the extent Jackson, Stanton, and West provided
inconsistent testimony throughout their initial identifications or at trial—a showing Plaintiff does
not even attempt to make—inconsistent testimony is not false testimony, let alone false testimony

knowingly used by the prosecutor to obtain a conviction. *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989). To the extent Petitioner argues that West and Stanton contradicted themselves by identifying Petitioner during trial after failing to identify Petitioner pretrial—again, an argument Petitioner fails to clearly assert—this, too, falls short of showing prosecutorial misconduct. *Monroe v. Smith*, 197 F.Supp.2d 753, 762 (E.D. Mich. 2001) (noting "the fact that a witness contradicts herself or changes her story [] does not establish perjury," adding a "habeas petition should [only] be granted if perjury by a government witness undermines the confidence in the outcome of the trial").

Plaintiff does not show—and the state-court record does not reveal—how the identification testimony at trial was false, perjured, or otherwise the result of prosecutorial misconduct. Petitioner is not entitled to habeas relief on this ground.

### D.  Ineffective Assistance of Counsel

Petitioner next argues that his state trial and appellate counsel were ineffective for failing to investigate and argue Petitioner's improper identification and prosecutorial misconduct claims. ECF No. 1 at PageID.10. Petitioner also suggests his trial counsel was ineffective for failing to file a motion to suppress the pretrial photo identification and the evidence derived from it. *Id.* The Wayne County Circuit Court expressly rejected these arguments on the merits, concluding—after applying the *Strickland* "performance and prejudice" standard—that neither of Petitioner's attorneys were constitutionally ineffective. ECF No. 6-15 at PageID.1150–51 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This conclusion was not contrary to federal law.

In *Strickland v. Washington*, the Supreme Court promulgated the preeminent "performance and prejudice" test for whether a counsel's representation is constitutionally sufficient. A criminal defendant—or habeas petitioner—asserting ineffective assistance must show (1) that counsel's

performance was objectively deficient, and (2) that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard applies to claims of ineffective trial and appellate counsel alike. *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Under the first "performance" prong, a defendant must show that their counsel's representation "fell below an objective standard of reasonableness." *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir.2013). However, when evaluating performance, courts must presume that the counsel's conduct "falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Moreland v. Robinson*, 813 F.3d 315, 328 (6th Cir. 2016) (quoting *Bell v. Cone*, 535 U.S. 685, 702 (2002)). Indeed, "defense counsel need not 'pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). And counsel does not render constitutionally deficient performance by failing to raise a meritless issue. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). Under the second "prejudice" prong, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

Notably, the *Strickland* standard is "all the more difficult" for a habeas petitioner to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). Accordingly, "the question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner has not shown that his state trial counsel was constitutionally ineffective for

failing to challenge the identification procedures employed by state police. On collateral review, the Wayne County Circuit Court ruled that the pretrial identification procedures were proper. ECF No. 6-15, PageID.1147. Likewise, this Court determined that the identification procedures did not violate Petitioner's due process rights. *Id.* Counsel is not constitutionally ineffective for failing to file a motion that has little to no chance of success. *See Dibble v. United States*, 103 F. App'x 593, 595 (6th Cir. 2004); *see also United States v. Heatwall*, No. 91-3164, 1991 WL 165589, at *2 (6th Cir. 1991) ("A rule of law, which would require counsel to file frivolous motions in order to insulate himself from a future claim of being ineffective, is one that has little to commend it."). Accordingly, Petitioner's ineffective-assistance-of-trial-counsel claim lacks merit.

Similarly, Petitioner has not shown that his appellate counsel was ineffective. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). As discussed, Petitioner's identification procedure and prosecutorial misconduct claims are meritless. *See supra* Sections III.B–C. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Petitioner is not entitled to habeas relief on the grounds that his trial and appellate counsel were constitutionally ineffective.

### E. Evidentiary Issues

Lastly, Petitioner argues that the trial court deprived him of a fair trial by allowing his jury to hear the testimony of John Wilkenson, Codefendant Lepper's great uncle. ECF No. 1 at

PageID.12. Petitioner and Lepper were tried simultaneously before two separate juries. *See People v. Lepper*, No. 327490, 2016 WL 7233828, at *6 (Mich. Ct. App. Dec. 13, 2016). During trial, Wilkenson identified one of the firearms recovered from the carjacking scenes as his Desert Eagle, which he testified went missing before the carjackings. *Id.* Petitioner argues that Wilkenson's identification (1) was irrelevant to whether Petitioner committed the crime, and (2) prejudiced Petitioner by associating him with Lepper's "prior bad act of gun theft." ECF No. 1 at PageID.12. But the Michigan Court of Appeals squarely rejected both arguments:

> [Petitioner] argues that he was denied a fair trial when the trial court permitted his jury to hear the testimony of John Wilkenson, who was Lepper's great uncle. Wilkenson testified that he owned a Desert Eagle handgun, but discovered that it was missing. He identified the recovered gun as his gun. [Petitioner] argues that only Lepper's separate jury should have been permitted to hear this testimony, which [Petitioner] maintains was not relevant to his case. Because [Petitioner] did not object to this testimony at trial, this issue is unpreserved and our review is limited to plain error affecting Bozeman's substantial rights.
>
> Generally, all relevant evidence is admissible. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Stanton testified that [Petitioner] was armed with a firearm, which she recognized as a Desert Eagle pistol. Stanton also testified that Lepper was involved in the attempt to take her car. A Desert Eagle pistol was among the firearms recovered near where Lepper and [Petitioner] were hiding, and casings found at the crime scene were matched to that firearm, which Wilkenson testified was the same gun that he discovered was missing from his house. Wilkenson's testimony was relevant to explain how [Petitioner], through his association with Lepper, could have acquired the type of gun that Stanton claimed [Petitioner] possessed during the offense. Thus, Wilkenson's testimony was admissible against [Petitioner]. Although [Petitioner] complains that Wilkenson thought that Lepper stole the firearm from him, he acknowledges that this theory was not presented to the jury. Accordingly, there was no plain error in the admission of the challenged testimony.

*Lepper*, 2016 WL 7233828, at *6 (internal quotations and citations omitted).

The Michigan Court of Appeals' conclusion was not an unreasonable application of federal law. First, to the extent that Petitioner's claim rests on state-law evidentiary error, he is not entitled

to habeas relief because alleged violations of the Michigan Rules of Evidence are not cognizable on federal habeas corpus review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996))). To the contrary, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999). And "state-court evidentiary rulings cannot rise to the level of due process violations unless" they offend fundamental principles of justice. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citing *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

To the extent Petitioner attempts to argue the admission of Wilkenson's testimony denied him due process, ECF No. 1 at PageID.12 (alleging denial of "state/federal constitutional rights"), Petitioner's claim is without merit. Far from showing a violation of fundamental principles of justice, Petitioner has not even shown that Wilkenson's testimony was irrelevant. As aptly noted by the Michigan Court of Appeals, Wilkenson's testimony was relevant to establish Petitioner's association with Codefendant Steven Lepper and Petitioner's own involvement in the carjackings. *See* FED. R. EVID. 401(a) (noting evidence is relevant if it "has any tendance to make a fact more or less probable than it would be without the evidence"). Victim Lana Stanton testified that she saw Petitioner wield a Desert Eagle handgun. ECF No. 6-9, PageID.569. Officer Kimberly Rata testified that a Desert Eagle handgun, among other firearms, was recovered from a trashcan near the carjacking scene and the location of Petitioner's arrest. ECF No. 6-10, PageID.732-733. Wilkenson testified that he was related to Lepper—one of Petitioner's Codefendants—and that he

owned the Desert Eagle recovered from the scene, which he realized was missing shortly before the carjackings occurred. ECF No. 6-11, PageID.901-902. From this testimony, Petitioner's jury could reasonably infer that Lepper likely obtained the handgun from Wilkenson but that Petitioner brandished the handgun throughout the carjackings. Wilkenson's testimony was relevant thus Petitioner's fifth and final ground for habeas relief is without merit.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

In this case, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes the above-captioned case.**

Dated: September 18, 2024                          s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge